<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

BERNADETTE REGISTRE,

                Plaintiff,

v.

TRANE TECHNOLOGIES PLC et al,

                Defendants.

Civil Action No. 25-11990 (SDW) (JRA)

**OPINION**

April 2, 2026

**WIGENTON**, District Judge.

Before this Court is Defendants Trane U.S. Inc. ("Trane"), initially improperly pled as "Trane Technologies PLC," Nathaniel Kiazolu ("Kiazolu"), Amber Yates ("Yates"), and Dameon Haynes's ("Haynes") (collectively, "Defendants") Motion to Dismiss (D.E. 14 ("Motion")) Plaintiff Bernadette Registre's ("Plaintiff") Amended Complaint (D.E. 10 ("Am. Compl.")) for failure to state a claim pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). Jurisdiction is proper pursuant to 28 U.S.C. § 1331. This opinion is issued without oral argument pursuant to Rule 78. For the reasons stated herein, the Motion to Dismiss is **GRANTED in part and DENIED in part**.

I.    **<u>FACTUAL BACKGROUND AND PROCEDURAL HISTORY</u>**

In July 2021, Plaintiff, a Black Haitian immigrant, commenced employment with Defendant Trane as a line worker. (Am. Compl. ¶ 10.) Throughout her employment with Trane, Plaintiff alleges that she suffered with a disability, urgent urinary incontinence (UUI), which is characterized by a sudden, uncontrollable need to urinate. (*Id.* ¶ 13.) Plaintiff informed her initial

1

supervisor, "Marlon," and her subsequent supervisor, Kiazolu, about her need for restroom related accommodations due to her medical condition. (*Id.* ¶ 21.) Initially, Marlon allowed Plaintiff to take unscheduled restroom breaks as needed. (*Id.* ¶ 22.)

In February 2022, Kiazolu became Plaintiff's supervisor and began making sexually suggestive remarks toward Plaintiff, including offensive phrases in Haitian Creole. (*Id.* ¶¶ 12–19.) After Plaintiff repeatedly rebuffed Kiazolu's sexual advances, Kiazolu denied Plaintiff access to restroom breaks. (*Id.* ¶ 24.) On or about June 7, 2022, Plaintiff filed a formal complaint with Trane's Human Resource Department ("HR") and her union, reporting sexual harassment and the refusal to accommodate her urgent urinary incontinence. (*Id.* ¶ 41.) During her meeting with HR, Plaintiff, who has limited English proficiency, was not provided a qualified Haitian Creole interpreter. (*Id.* ¶ 39.) Plaintiff further alleges that after her June 7, 2022 complaint, she experienced harassing conduct from other coworkers as well. On or about November 25, 2022, Plaintiff's coworker sent her unsolicited pornographic videos. (*Id.* ¶ 123.) On or about May 2023, a male coworker shoved hot metal against Plaintiff's skin causing burns. (*Id.* ¶ 310.) Between June 15-30, 2023, a male coworker cornered Plaintiff in the breakroom and attempted to grope her. (*Id.* ¶ 309.) On or about July 31, 2023, another male coworker made sexual comments about Plaintiff's body. (*Id.* ¶ 310.)

Additionally, Plaintiff alleges that she received several disciplinary actions due to her medical condition. On or about April 3, 2023, Plaintiff requested time off to attend a scheduled pelvic floor therapy session for her incontinence. (*Id.* ¶ 143.) Haynes, Plaintiff's manager, denied Plaintiff's request for time off. (*Id.* ¶ 147.) On or about April 13, 2023, Plaintiff attended her pelvic floor therapy and was issued a written warning for her absence. (*Id.* ¶¶ 154–55.) Then, on or about June 23, 2023, Plaintiff was suspended and issued a formal warning for "excessive

2

bathroom use." (*Id.* ¶ 173.)  Shortly thereafter, Plaintiff also received a second disciplinary warning on June 30, 2023.  (*Id.* ¶ 182.)  On October 6, 2023, HR issued Plaintiff a written warning for poor performance and not being at her workstation at designated times.  (*Id.* ¶¶ 204–05.) Following this warning, on October 9, 2023, Plaintiff resigned from her position with Trane.  (*Id.* ¶ 220.)  Plaintiff's resignation was effectuated on October 13, 2023.  (*Id.* ¶ 221.)

Plaintiff initially filed the instant lawsuit on April 24, 2025 in the Superior Court of New Jersey, Morris County, Law Division, which Defendants removed to this Court on June 20, 2025. (D.E. 1-1.)  Plaintiff then filed her Amended Complaint on September 5, 2025 asserting claims for: (1) disability discrimination under the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. § 10:5-12(a); (2) failure to accommodate under the NJLAD; (3) failure to engage in the interactive process in violation of the NJLAD; (4) retaliation under the NJLAD; (5) interference with rights under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2615(a)(1); (6) FMLA retaliation; (7) hostile work environment under the NJLAD; (8) national origin discrimination under the NJLAD; (9) constructive discharge in violation of the NJLAD; (10) aiding and abetting discrimination and retaliation under the NJLAD; and (11) common law battery.[1]  (D.E. 10.)  Defendants subsequently filed the present Motion to Dismiss all of Plaintiff's claims with the exception of Count V.  (D.E. 14.)  All briefing was timely completed.

## II.    LEGAL STANDARD

To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

---

[1] With the exception of Plaintiff's FMLA claims, Plaintiff's claims are all state law claims.  This Court reserves its right to decline supplemental jurisdiction over Plaintiff's state law claims at a later date.  *See Ass'n of New Jersey Rifle & Pistol Clubs, Inc. v. Christie*, 850 F. Supp. 2d 455, 462 (D.N.J. 2012), *aff'd sub nom. Ass'n New Jersey Rifle & Pistol Clubs v. Governor of New Jersey*, 707 F.3d 238 (3d Cir. 2013) ("Under 28 U.S.C. § 1367(c)(3), a district court has discretion to decline to exercise supplemental jurisdiction over state law claims if it has dismissed all claims over which it had original jurisdiction").

face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

When deciding a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief may be granted, federal courts "must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff," and determine "whether [the] plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer*, 605 F.3d at 229.  Determining whether a complaint's allegations are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.  If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to show "that the pleader is entitled to relief." *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).  "[L]abels and conclusions" or a "formulaic recitation of the elements of a cause of action" are insufficient to withstand a motion to dismiss.  *Twombly*, 550 U.S. at 555.

## III.    **DISCUSSION**

### A.  **Counts I and VIII — Disability and National Origin Discrimination**

Defendants contend that Plaintiff's disability and national origin discrimination claims under the NJLAD must be dismissed because Plaintiff has not alleged an adverse action or facts sufficient to allow this Court to draw a reasonable inference of discrimination.  Plaintiff counters that she suffered multiple adverse actions such as discipline for her disability symptoms, including multiple warnings and a suspension.

The NJLAD specifically prohibits employment discrimination based on disability and national origin. N.J. Stat. Ann. § 10:5–12(a).  New Jersey courts have adopted the framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), as the starting point in actions brought under the NJLAD.  *See Tourtellotte v. Eli Lilly and Co.*, 636 F. App'x. 831, 841 (3d Cir. 2016) ("This Court's discrimination inquiry is the same for claims filed under Title VII and the NJLAD as the New Jersey statute borrows the federal standard set forth in *McDonnell Douglas*.")  While the first step of the *McDonnell Douglas* framework requires the plaintiff to demonstrate the existence of a prima facie case of discrimination, the Third Circuit has explained that, at the motion to dismiss stage, a plaintiff is not required to establish a prima facie case.  *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016) ("[A] complaint need not establish a prima facie case in order to survive a motion to dismiss.") (citing *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 510 (2002)).  Instead, a plaintiff must allege "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements." *Id.* (citing *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008)).  Nonetheless, the *McDonnell Douglas* elements provide guidance in assessing whether Plaintiff has stated a plausible claim under the pleading standards of *Twombly* and *Iqbal*.  *See Spence v. New Jersey*, No. 19-21490, 2021 WL 1345872, at *3 (D.N.J. Apr. 12, 2021).

To establish a prima facie case of disability discrimination under the NJLAD, a plaintiff must demonstrate:

> (1) plaintiff was handicapped or disabled within the meaning of the statute; (2) plaintiff was qualified to perform the essential functions of the position of employment, with or without accommodation; (3) plaintiff suffered an adverse employment action because of the handicap or disability; and (4) the employer sought another to perform the same work after plaintiff had been removed from the position.

*Rich v. State*, 294 F. Supp. 3d 266, 278 (D.N.J. 2018) (citing *Victor v. State*, 952 A.2d 493, 501 (N.J. Super. App. Div. 2008), *aff'd as modified*, 4 A.3d 126 (N.J. 2010)).  To state a prima facie claim for national origin discrimination, Plaintiff must show that: (1) she belongs to a protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action despite being qualified; and (4) that adverse action occurred under circumstances giving rise to an inference of discrimination.  *Prass v. New Jersey Dep't of Corr.*, 651 F. Supp. 3d 764, 769 (D.N.J. 2023).  Notably, to establish the fourth element, a plaintiff may either: "(1) introduce evidence of comparators (i.e., similarly situated employees who (a) were not members of the same protected class and (b) were treated more favorably under similar circumstances); or (2) rely on circumstantial evidence that otherwise shows a causal nexus between his membership in a protected class and the adverse employment action."  *Greene v. Virgin Islands Water & Power Auth.*, 557 F. App'x 189, 195 (3d Cir. 2014).

Here, Defendants do not dispute the first two elements, rather Defendants argue that Plaintiff's discrimination claims must be dismissed because Plaintiff did not suffer an adverse employment action.  Plaintiff counters that she suffered adverse employment actions in the form of written disciplinary warnings, her suspension, and ultimately her constructive discharge.  An adverse employment action means that the employee suffered "some harm" with respect to a term or condition of employment.  *Peifer v. Bd. of Prob. & Parole*, 106 F.4th 270, 277 (3d Cir. 2024) (citing *Muldrow v. City of St. Louis*, 601 U.S. 346, 355 (2024)).  An employee is not required to demonstrate that the purported adverse employment action was a "serious and tangible" employment-related harm.  *Id.*

Although *Muldrow* lowered the bar for establishing an adverse employment action, a written reprimand that fails to "effect a material change in the terms or conditions of ...

6

employment" does not constitute an adverse employment action.  *Day v. New Jersey Dep't of Corr.*, No. 21-9986, 2024 WL 4407005, at *4 (D.N.J. Aug. 30, 2024), *aff'd*, No. 24-2803, 2025 WL 3206676 (3d Cir. Nov. 17, 2025); *see also Acciavatti v. Children's Hosp. of Philadelphia*, No. CV 20-1327, 2022 WL 22896869, at *9 (D.N.J. June 28, 2022).  Conversely, a suspension may constitute an adverse employment action.[2]  *See Freeman v. Amazon.com Servs., LLC*, No. 24-8181, 2026 WL 496630, at *8 (D.N.J. Feb. 23, 2026).  However, Plaintiff does not allege whether her suspension was paid or unpaid nor does Plaintiff state the length of the suspension.  As such, Plaintiff has not alleged sufficient facts for this Court to conclude that her suspension constituted an adverse employment action.

Next, the Third Circuit has held that a constructive discharge may constitute an adverse employment action.  *See Mieczkowski v. York City Sch. Dist.*, 414 F. App'x 441, 445 (3d Cir. 2011) ("[A] constructive discharge, if it occurred, constitutes an adverse employment action.").  To properly plead a constructive discharge, a plaintiff must set forth facts showing that "the employer knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign." *Nuness v. Simon & Schuster, Inc*, 221 F. Supp. 3d 596, 604 (D.N.J. 2016) (citing *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1084 (3d Cir. 1996)); *see also Shepherd v. Hunterdon Dev. Ctr.*, 803 A.2d 611, 627 (N.J. 2002).  This is an objective test and thus an employee's subjective perceptions of unfairness or harshness do not govern a claim of constructive discharge.  *Nuness*, 221 F. Supp. At 604.  However, determining whether an employee was constructively discharged is a fact-specific inquiry that is not appropriate at this

---

[2] Before *Muldrow*, whether a suspension constituted an adverse employment action depended on if the suspension was paid or unpaid. *See Jones v. Se. Pa. Transp. Auth.*, 796 F.3d 323, 326 (3d Cir. 2015) (stating that a paid suspension is not an adverse employment action).  Plaintiff does not state whether her suspension was paid or unpaid.  However, post-*Muldrow*, the Third Circuit noted that a suspension with pay, might under some circumstances, constitute an adverse employment action. *Russo v. Bryn Mawr Tr. Co.*, No. 22-3235, 2024 WL 3738643, at *4, n.3 (3d Cir. Aug. 9, 2024)

stage of the pleadings. *See Hill v. Borough of Kutztown*, 455 F.3d 225, 233 n.7 (3d Cir. 2006) ("It would have been inappropriate for the District Court to decide that fact-intensive question [of constructive discharge] in the context of a 12(b)(6) motion."); *see also Thompson-Lyons v. Cmty. Dental of Hamilton, P.C.*, No. 21-20671, 2022 WL 3354729, at *3 (D.N.J. Aug. 12, 2022) (finding that constructive discharge is inappropriate on a Rule 12(b)(6) motion)).

Here, Plaintiff alleges that she was constructively discharged because she experienced disciplinary actions for her disability symptoms.[3] Defendants argue that Plaintiff did not suffer a constructive discharge because Plaintiff fails to allege facts demonstrating objectively intolerable conditions that would force a reasonable person to resign. At this early stage, this Court cannot conclude, as a matter of law, that a reasonable person would find it necessary to resign. Although Plaintiff's allegations supporting her claims of constructive discharge are sparse, dismissal would not be appropriate on this basis.[4]

Nevertheless, Plaintiff's Amended Complaint fails to allege any facts whatsoever in support of the final element of the prima facie case of disability and national origin discrimination under the NJLAD. Plaintiff makes no allegations at all regarding whether Defendants sought to hire anyone to replace her, let alone that it sought similarly qualified individuals who were not disabled. Nor has Plaintiff pleaded sufficient facts suggesting an inference of discrimination based on her national origin. Plaintiff's conclusory assertion that Defendants' denial of her request for a Haitian Creole interpreter was discriminatory is insufficient. Plaintiff does not allege that similarly situated non-Haitian employees were treated more favorably under similar circumstances or any

---

[3] This Court notes that the Amended Complaint does not clearly distinguish whether Plaintiff alleges she was constructively discharged because of her disability or because of the purported sexual harassment.

[4] For this reason, Defendants' motion to dismiss Count IX is denied.

8

other causal nexus between her being Haitian and the alleged adverse employment actions. Accordingly, Counts I and VIII are dismissed.

### B. Counts II and III — Failure to Accommodate and Engage in the Interactive Process[5]

"To prevail on a failure to accommodate claim, a plaintiff must first present the prima facie elements required in any disability discrimination claim." *Fitzgerald v. Shore Mem'l Hosp.*, 92 F. Supp. 3d 214, 237 (D.N.J. 2015); *see also Tourtellotte v. Eli Lilly & Co.*, 636 F. App'x 831, 849 (3d Cir. 2016). Additionally, a plaintiff must then allege that: (1) she was disabled and her employer knew it; (2) she requested an accommodation or assistance; (3) her employer did not make a good faith effort to assist; and (4) she could have been reasonably accommodated. *Bertolotti v. AutoZone, Inc.*, 132 F. Supp. 3d 590, 602 (D.N.J. 2015) (citing *Armstrong v. Burdette Tomlin Mem. Hosp.*, 438 F.3d 240, 246 (3d Cir. 2006)).

A plaintiff must make it clear that she wants assistance for her disability. *See Fitzgerald*, 92 F. Supp. at 238 (citing *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 313 (3d Cir.1999)); *see also Armstrong*, 438 F.3d at 247 (noting that employee requested accommodation when she "made her handicap known and announced her desire for assistance"). The request must provide "enough information that, under the circumstances, the employer can be fairly said to know of both the disability and desire for an accommodation." *Taylor*, 184 F.3d at 313. When an employee requests an accommodation for a disability, the employer has a responsibility "to engage the employee in the interactive process of finding accommodations." *Bertolotti*, 132 F. Supp. 3d at 602 (citing *Armstrong*, 438 F.3d at 246).

---

[5] Courts in this district have analyzed claims for failure to accommodate and failure to engage in the interactive process as a single count. *See e.g.*, *Minegar v. Amazon.com Servs. Inc.*, No. 22-02162, 2023 WL 2244997, at *3, n.7 (D.N.J. Feb. 27, 2023); *Ferren v. Foulke Mgmt. Corp.*, No. 15-3721, 2017 WL 634511, at *2 , n. 3 (D.N.J. Feb. 16, 2017).

Here, considering that Plaintiff fails to sufficiently plead a claim for disability discrimination, Plaintiff's failure to accommodate claim also fails. *See Guarneri v. Buckeye Pipe Line Servs. Co.*, 205 F. Supp. 3d 606, 618 (D.N.J. 2016) (dismissing failure to accommodate claim because plaintiff failed to establish disability discrimination claim); *Olcott v. Win Waste Innovations*, No. 23-21551, 2026 WL 686496, at *7 (D.N.J. Mar. 11, 2026) (same); *Fowler v. AT&T Servs., Inc.*, No. 18-667, 2020 WL 2839461, at *9 (D.N.J. May 31, 2020), *aff'd sub nom. Fowler v. AT&T, Inc.*, 19 F.4th 292 (3d Cir. 2021) (same). Notwithstanding, Plaintiff also fails to adequately allege that Trane knew that she was disabled. Although Plaintiff alleges that her direct supervisors were aware of her medical condition, there are no facts in the Amended Complaint to indicate that Plaintiff explicitly informed Trane of her specific disability or that her medical condition was a disability. Likewise, Plaintiff fails to sufficiently plead that she requested an accommodation for her disability. Again, Plaintiff makes multiple references to her requests for restroom accommodations, but the Amended Complaint lacks clear factual allegations detailing that such requests were for her disability. Accordingly, Counts II and III are dismissed.

### C. Counts IV and VI — Retaliation

#### i. NJLAD Retaliation

The prima facie elements of a retaliation claim under the NJLAD require a plaintiff to demonstrate that: (1) plaintiff engaged in protected activity known to the employer; (2) plaintiff was thereafter subjected to an adverse employment consequence; and (3) that there is a causal link between the protected activity and the adverse employment consequence. *Sgro v. Bloomberg L.P.*, 331 F. App'x 932, 939 (3d Cir. 2009); *Victor v. State*, 4 A.3d 126, 141 (N.J. 2010). Defendants contend that Plaintiff's Amended Complaint fails to plead any of the elements to establish a retaliation claim under the NJLAD.

10

First, a person engages in a "protected activity" under the NJLAD when that person opposes any practice rendered unlawful under the NJLAD. *Cohen v. BH Media Grp., Inc.*, 419 F. Supp. 3d 831, 861 (D.N.J. 2019) (citing *Young v. Hobart W. Grp.*, 897 A.2d 1063 (N.J. Super. App. Div. 2005)). Filing a complaint may constitute "protected activity." *See Bradley v. Atl. City Bd. of Educ.*, 736 F. Supp. 2d 891, 900 (D.N.J. 2010). However, not every complaint or letter entitles its author to protection from retaliation under the NJLAD. *Ogunbayo v. Hertz Corp.*, 542 F. App'x 105, 106–07 (3d Cir. 2013) (citing *Roa v. Roa*, 985 A.2d 1225, 1236 (N.J. 2010). Rather, only challenges to discrimination prohibited by the NJLAD, such as discrimination on the basis of race, age, or gender, constitute "protected activity." *Id.* Moreover, a complaint must also be more than a mere general complaint of unfair treatment. *Cohen*, 419 F. Supp. 3d at 861.

Here, the purported protected activity relevant to Plaintiff's retaliation claims is the June 7, 2022 complaint of sexual harassment and the denial of disability accommodations.[6] A sexual harassment complaint constitutes a protected activity. *See Moody v. Atl. City Bd. of Educ.*, 870 F.3d 206, 220 (3d Cir. 2017) (noting that the parties conceded that a sexual harassment complaint constituted a protected activity); *see also Hargrave v. Cnty. of Atl.*, 262 F. Supp. 2d 393, 424 (D.N.J. 2003). A complaint of disability discrimination also constitutes a protected activity. *See Ogunbayo*, 542 F. App'x at 106–07 (stating that challenges to discrimination prohibited by the NJLAD constitutes protected activity). Accordingly, Plaintiff has adequately pleaded that she engaged in a protected activity under the NJLAD.

---

[6] At the pleading stage, this Court must accept Plaintiff's well-pleaded facts as true. Plaintiff's Amended Complaint alleges that Plaintiff's June 7, 2022 complaint to HR encompassed her complaints of sexual harassment and denial of disability accommodations. When accepting this allegation as true, Plaintiff has sufficiently pleaded that she complained of disability discrimination. Thus, in this context, "protected activity" includes Plaintiff's attempt to vindicate her right under the NJLAD to be free from disability discrimination.

Next, to establish a retaliation claim under the NJLAD, a plaintiff must properly plead that he or she suffered an adverse employment action. The standard for adverse action that applies to retaliation claims is less stringent than the one that applies in the discrimination context. For retaliation claims, an adverse action must be "materially adverse, such that it is harmful to the point that it could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Smith v. City of Atl. City*, 138 F.4th 759, 775 (3d Cir. 2025) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)). Here, Plaintiff's allegations fail to support an adverse employment action for retaliation purposes. As previously stated, written warnings and suspensions that fail to effect a material change in the terms or conditions of employment do not constitute adverse employment actions. Moreover, although a constructive discharge constitutes an adverse employment action, this Court cannot conclude whether Plaintiff was constructively discharged at this stage.

Regardless, even if the pleaded retaliatory events would have deterred a reasonable person from filing a complaint, Plaintiff has failed to demonstrate a causal nexus between the protected activity and the alleged retaliatory actions. A plaintiff may demonstrate causation by showing: "(1) a close temporal relationship between her report and discharge, or (2) that the proffered evidence, looked at as a whole, raises the inference of causation." *Nuness v. Simon & Schuster, Inc*, 221 F. Supp. 3d 596, 606 (D.N.J. 2016) (citing *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007)). Without close temporal proximity, courts consider the "circumstances as a whole, including any intervening antagonism by the employer, inconsistencies in the reasons the employer gives for its adverse action, and any other evidence suggesting that the employer had a retaliatory animus when taking the adverse action." *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 196 (3d Cir. 2015). Here, Plaintiff fails to plead a close temporal relationship

12

between her protected activity and the alleged constructive discharge as she resigned more than a year after her June 7, 2022 complaint.  *See Daniels*, 776 F.3d at 198 (stating that the plaintiff failed to show an "unusually suggestive" temporal proximity because ten months passed between the protected activity and adverse action).  Furthermore, Plaintiff's conclusory allegations of unfair treatment are insufficient to create an inference of causality.  Accordingly, Count IV is dismissed.

ii.    FMLA Retaliation

To establish a prima facie case of retaliation under the FMLA, a plaintiff must prove that: (1) he or she invoked his right to FMLA benefits; (2) he or she suffered an adverse employment action; and (3) adverse employment action was causally related to his or her invocation of FMLA rights.  *Lichtenstein v. University of Pittsburgh Medical Center*, 691 F.3d 294, 302 (3d Cir. 2012).

Here, Plaintiff fails to plead a claim for retaliation under the FMLA because she does not demonstrate that she suffered an adverse employment action.  Plaintiff alleges that she suffered an adverse employment action because she received a written disciplinary warning for attending her medical appointment and was suspended weeks later.  However, a writing warning does not constitute an adverse employment action.  Although a suspension may constitute an adverse employment action, Plaintiff alleges that she was suspended for frequent restroom use and not because of her request for leave or the invocation of her right to FMLA benefits.  As such, Plaintiff also fails to adequately plead a causal connection between her suspension and her request for leave. Accordingly, Count VI is dismissed.

### D. Count VII — Hostile Work Environment

i.    Continuing Violation Doctrine

Plaintiff contends that from February 2022 through October 2023, she was subjected to a hostile work environment under the NJLAD based on sexual harassment, national origin, and

disability.  Defendants argue that Plaintiff's claims are barred as to events that took place prior to April 24, 2023 (two years prior to the filing of Plaintiff's initial complaint).  Plaintiff asserts that her pre-April 24, 2023 allegations are not time-barred because of the continuing violation doctrine.

Generally, NJLAD claims are subject to a two-year statute of limitations.  *See Montells v. Haynes*, 627 A.2d 654, 655 (N.J. 1993).  However, New Jersey courts recognize that "[w]hen an individual is subject to a continual, cumulative pattern of tortious conduct," as is the case when a plaintiff is subject to a hostile work environment, "the statute of limitations does not begin to run until the wrongful action ceases." *Sgro v. Bloomberg L.P.*, 331 F. App'x 932, 938 (3d Cir. 2009) (citing *Wilson v. Wal–Mart Stores*, 729 A.2d 1006, 1010 (N.J. 1999).  To qualify for the continuing violations doctrine, "the plaintiff must establish that the harassment is more than the occurrence of isolated or sporadic acts of intentional discrimination." *Id.*  "[D]iscrete acts—such as the demotions, transfers, failures to promote, and other adverse employment actions that plaintiffs allege they experienced due to their [protected class]—do not fall under the continuing violations doctrine and are subject to the NJLAD's two-year statute of limitations." *Id.*  Therefore, "[t]o allege a continuing violation, the plaintiff must show that all acts which constitute the claim are part of the same unlawful employment practice and that at least one act falls within the applicable limitations period." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 165-66 (3d Cir. 2013).

To establish whether an act is "continual," courts consider: "(1) whether the violations are part of the same subject matter; and (2) whether the violations occurred frequently." *Cibula v. Fox*, 570 F. App'x 129, 135-36 (3d Cir. 2014) (citing to *Mandel*, 706 F.3d at 165-67).  The first factor concerns "whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation." *Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001).

14

The second factor assesses "whether the acts are recurring or more in the nature of isolated incidents." *Id.*

Here, Plaintiff's allegations are rife with isolated incidents of sexual harassment by various actors that Plaintiff fails to connect to one another. Specifically, beyond conclusory allegations, Plaintiff does not demonstrate how Kiazolu's conduct, which occurred from February 2022 to June 2022, connects to her post-April 24, 2023 allegations.[7] Such allegations are insufficient to adequately plead a continuing violation. Accordingly, this Court finds that Plaintiff's allegations preceding April 24, 2023 are time-barred.

    ii.    Hostile Work Environment

To establish a hostile work environment claim under the NJLAD, a plaintiff must demonstrate that: (1) she suffered intentional discrimination because of her protected class; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person in like circumstances; and (5) the existence of respondeat superior liability. *Mandel v. M& Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013) (citing *Jensen v. Potter*, 435 F.3d 444, 449 (3d Cir. 2006)); *see also Sgro v. Bloomberg L.P.*, 331 F. App'x 932, 941 (3d Cir. 2009) ("New Jersey courts treat hostile work environment claims under the NJLAD the same as the Supreme Court treats hostile work environment actions under Title VII"). The first four elements establish a hostile work environment, while the fifth element focuses on employer liability. *Hudson v. Procter & Gamble Paper Prods. Corp.*, 568 F.3d 100, 104 (3d Cir. 2009).

Here, even if Plaintiff could establish the four elements of a hostile work environment, Plaintiff's post-April 24, 2023 allegations are insufficiently pled to establish respondeat superior

---

[7] To this extent, Plaintiff's claims against Kiazolu are time-barred as Plaintiff only alleges conduct that took place prior to April 24, 2023.

liability.  Under the NJLAD, an employer is liable for a co-worker's harassing conduct only if "management-level employees knew, or in the exercise of reasonable care should have known, about the campaign of harassment." *Nuness v. Simon & Schuster, Inc*, 221 F. Supp. 3d 596, 604 (D.N.J. 2016) (citing *Herman v. Coastal Corp.*, 791 A.2d 238, 252 (N.J. Super. Ct. App. Div. 2002)).  Plaintiff's post-April 24, 2023 allegations consist of various allegations of harassing conduct by her coworkers.  However, Plaintiff's Amended Complaint does not plausibly plead that any supervisors or management level employees were aware or informed of the alleged harassing conduct to establish respondeat superior liability.  Accordingly, Count VII is dismissed.

### E.  Count X — Aiding and Abetting

The NJLAD prohibits "any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under [the] act[.]"  N.J. Stat. Ann. § 10:5–12(e).  To establish an aiding and abetting claim under the NJLAD, a plaintiff "must demonstrate that the defendants: (1) aided another in performing a wrongful act that caused an injury; (2) were aware of their role in the illegal activity at the time it was committed; and (3) knowingly and substantially assisted with the main violation." *K.J. v. Greater Egg Harbor Reg'l High Sch. Dist. Bd. of Educ.*, 431 F. Supp. 3d 488, 514 (D.N.J. 2019); *see also Cicchetti v. Morris Cty. Sheriff's Office*, 947 A.2d 626, 645 (N.J. 2008). However, the NJLAD "does not impose individual liability upon non-supervisory employees." *Id.*  To determine whether a supervisor has provided "substantial assistance" to the principal violator, the court looks to several factors: "(1) the nature of the act encouraged, (2) the amount of assistance given by the supervisor, (3) whether the supervisor was present at the time of the asserted harassment, (4) the supervisor's relations to the others, and (5) the state of mind of the supervisor." *Tarr v. Ciasulli*, 853 A.2d 921, 929 (N.J. 2004)

Here, Plaintiff has failed to allege a plausible claim for aiding and abetting against Defendants Kiazolu, Yates, and Haynes. First, as stated above, Plaintiff's claims against Kiazolu fail as they are time-barred. As to Defendant Yates, the Amended Complaint does not contain any facts to suggest that Yates ever acted as Plaintiff's supervisor, such that she could be liable for aiding and abetting violations of the NJLAD. Moreover, Plaintiff has not pled any facts to support her conclusory allegation that Hayne's "knowingly and substantially" assisted in discriminating against Plaintiff. As such, the Amended Complaint fails to state a claim for aiding and abetting against Kiazolu, Yates, and Haynes. Therefore, Count X is dismissed.

### F.  Count XI — Common Law Battery

Plaintiff alleges that Defendant Trane is liable for battery under the doctrine of respondeat superior. Under the doctrine of respondeat superior an employer is liable for the torts of his employees which are committed within the scope of their employment. *Brijall v. Harrah's Atl. City*, 905 F. Supp. 2d 617, 622 (D.N.J. 2012). Generally, intentional torts do not fall within the scope of employment. *Id.* However, New Jersey courts "have found employees acts to be within the scope of their employment when their attempts to enforce their employer's rules instigated violence." *Id.* (quoting *Davis v. Devereux Found.*, 37 A.3d 469, 490 (N.J. 2012)). Here, Plaintiff fails to plead a claim for common law battery against Defendant Trane because Plaintiff does not allege that its employees committed the tort of battery within the scope of their employment. Plaintiff does not allege that the employees acted to enforce Trane's rules or to further serve Trane. Therefore, Count XI is dismissed.

## IV.    CONCLUSION

For the reasons set forth above, the Motion to Dismiss is **GRANTED in part and DENIED in part**.  Plaintiff shall have thirty (30) days to file an amended complaint.  An appropriate order follows.

/s/ *Susan D. Wigenton*
**SUSAN D. WIGENTON, U.S.D.J.**

Orig:   Clerk
cc:     José R. Almonte, U.S.M.J.
        Parties